IONIA TRANSPORTATION CO. v 2,098 TONS OF COAL.

(District Court, E. D. Wisconsin. March 14, 1904.)

1. SHIPPING—DEMURRAGE—IMPLIED OBLIGATION FOR DISPATCH IN DISCHARGING.

Where a charter party contains no express provision for demurrage, or fixing the lay days for loading and discharging, an implied obligation arises on the part. of the consignee for reasonable dispatch in discharging, and demurrage is recoverable for delay beyond a reasonable time under the circumstances surrounding the case, and without the fault of the vessel; but the consignee is not an insurer against delay in the absence of a charter provision to that effect, and there is no liability for demurrage where delay occurs from circumstances beyond his control, and which could not have been anticipated, such as a temporary derangement .of the dock machinery used for unloading, where there was no other dock available.

---

¶ 1. Demurrage, see notes to Harrison v. Smith, 14 C. C. A. 657; Randall v. Sprague, 21 C. C. A. 337; Hagerman v. Norton, 46 C. C. A. 4.

See Shipping, vol. 44, Cent. Dig. §§ 576, 580.

In Admiralty.    Suit for demurrage.

Libel for demurrage, alleging unreasonable delay in discharging a cargo of coal, under charter for delivery at "Clancy's dock," port of Racine, with no terms stated as to discharge. The rate was 60 cents per ton, being 10 cents in excess of the current rate to Milwaukee, Sheboygan, and Manitowoc; and the master states, as the ground for such excess, the insufficiency of channel at Racine for the general class of coal carriers. The facts which are material upon the primary issue of liability are undisputed, namely: The steamer Ionia received the cargo at Toledo, October 24, 1903, and arrived at Racine about noon, October 29th, when due report was made to the consignee. Arrangement for discharge at Clancy's dock had been made by the consignee, and that was the only coal dock at the port which was open to such service. The steamer Marina, laden with 3,200 tons of coal for the dock owners, was then at the dock in course of discharge, and was not unloaded until the evening of November 10th, when the Ionia moved into her berth; but discharge was not commenced until November 11th, at noon, owing to needful change in the dock equipment from "clam shells" to buckets, and discharge occupied four working days. The causes for these delays were: When the Marina arrived, about ten days in advance of the Ionia, the owners of the dock were engaged in changing the equipment from buckets to the "clam-shell system," under contracts which they claim were not duly performed as to time or character of work, so that discharge of the Marina could not be commenced until October 28th; and the time then required for discharging was at least double the usual time with the old equipment, due solely to defects in the new equipments. For unloading the Ionia, it was deemed best to resume use of the buckets, and the change delayed its commencement; but the work was pushed, and discharge expedited, so that the only objections raised in that particular are (1) the fact that defective clam-shell equipment intervened; and (2) the fact that the electric lighting system of the plant, destroyed by fire shortly before the arrival, was not in use, thus shortening the working hours. This aggregate detention caused damage to the libelant when the lay days were of special value, for making another trip before the close of the season, and occurred without fault on the part of the libelant. The respondent is equally free from fault, unless chargeable with the conditions referred to which were found at the dock.

John C. Richberg, for libelant.
Charles H. Lee and Van Dyke & Van Dyke & Carter, for claimant.

SEAMAN, District Judge (after stating the facts as above). The doctrine is well settled that the right to demurrage for failure of a shipper to promptly deliver the cargo, or of a consignee to promptly discharge it on arrival, rests upon the charter or affreightment contract, either in express or implied terms. Time is an element of special importance in such contracts, and it is well remarked that "a vessel should ordinarily have prompt dispatch, for such is essential to her profitable employment" (Corrigan v. Iroquois Furnace Co., 100 Fed. 870, 41 C. C. A. 102), so that stringent terms for lay days are not uncommon in bills of lading. The right to exact such terms is recognized, and the authorities are harmonious for strict liability of the shipper or consignee in the event of breach. When no such express provisions appear in the contract, the modern authorities concur in the view that an implied obligation arises on the part of the consignee for reasonable dispatch, but they are not harmonious in the rule which governs the issue of reasonableness. As expressed in one line of opinions, and by distinguished maritime authorities, this implied liability of the consignees is absolute for de-

lay beyond the customary requirement at the port of discharge, "although no blame is imputable to them, provided the owner [or vessel] be not at fault" (1 Parsons on Shipp. & Admir. 314; MacLachlan on Shipping [3d Ed.] 523), while the other line excuses the consignee from such liability when the delay is not voluntary, but arises from circumstances beyond his control (Empire Transportation Co. v. Philadelphia, etc., Coal & Iron Co., 23 C. C. A. 564, 571, 77 Fed. 919, 35 L. R. A. 623, and cases reviewed).

In the case at bar the causes of delay were obviously beyond the control of the consignee, and solution of the issue rests upon the adoption of one or the other of the lines of decision referred to. I have examined the cases cited in support of the broad contentions on behalf of the libelant, with others bearing upon the interesting question, but the opinion in Empire Transportation Co. v. Philadelphia, etc., Coal & Iron Co., with its well-considered review of the authorities, impresses me as stating the true rule to be applied when the contract is silent as to lay days or dispatch; and this view is strongly fortified by its approval in the opinion by Judge Jenkins, speaking for the Circuit Court of Appeals, in Corrigan v. Iroquois Furnace Co., 41 C. C. A. 102, 104, 100 Fed. 870. While the last-mentioned case is not directly in point, the statement of the rule as to reasonable dispatch—"that reasonable time is determined by the circumstances surrounding each case"—citing the Empire Transportation Co. Case, supra, is clearly pertinent. The doctrine for which the libelant contends implies an undertaking by the consignee as an insurer against delay from any cause not attributable to the vessel, and I am of opinion that no such obligation is incurred without an express provision in the charter to that effect. With such terms liberally construed and strictly enforced, no just ground appears for further liberality in favor of the vessel by raising an implied liability of like effect, when the express provision is voluntarily omitted. The question is not presented, upon this record, whether the consignee is bound to inform the vessel owners of local conditions known to him, and to them unknown, from which unusual delay in discharging the cargo appears to be probable or inevitable, for the reason that the conditions were not of such character, if known to the consignee, that delay must have been thus foreseen. Consideration, therefore, of duty in that regard, is not involved.

Finding no delay chargeable to the respondent, the libel upon that ground is without support. Upon the further cause stated for unpaid freight, the amount claimed is tendered by the answer, and the money deposited in court. The libelant will be allowed this amount, with costs to the date of such tender, and the respondent will recover its costs upon the demurrage issue.

Let decree enter accordingly.

## NOTE.

Since filing the above opinion, recent English cases have come to my attention which disapprove the earlier decisions on which the authors of the text-books mentioned in the opinion predicated, in

part, at least, the rule of absolute liability, and adopt the rule and test of reasonable dispatch upheld in this opinion. The cases are Postlethwait v. Freeland (H. of L.) 5 App. Cas. 599, and Lyle Shipping Co., Limited, v. Corporation of Cardiff (C. of A.) 2 Law Rep. Q. B. D. 638, with review of authorities. In the former it is said the duty of the consignee "is not absolute, but to do his best." The last-mentioned case states that the rule was unsettled prior to Postlethwait v. Freeland, but that the test of reasonable dispatch, as thereby established, was "not a hypothetical state of things," not "an ordinary state of circumstances," but "the actual state of things at the time of discharge."